The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and get their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have four cases on for hearing this morning. The first is 23-1541, Gelin v. Baltimore County. Mr. Neitzel. Thank you, Your Honor. May it please the Court. The United States District Court committed error when it denied qualified immunity to the corrections officers here in a case involving the suicide of an inmate. In order to be denied qualified immunity, the officers would have had to have violated a clearly established right and a fair description of the right at issue based on the facts. It is the right to be protected from suicide even when the officers have no knowledge of any substantial risk of suicide. The facts here indicate, in fact, not only did the officers not know of any substantial risk of suicide, that first of all, there's no knowledge that they knew much of anything at all about the mental health. Before you get to the merits of that, can we talk about some procedural matters first? Slightly different than the issue we asked supplemental briefing on, but related. It appears to me the notice of appeal that was filed mentions or references the April 13th order letter as the order being appealed, not the March 13th order. I'm trying to understand how the appeal is timely. It was more than 30 days after the March order. Normally, motions to reconsider aren't immediately appealable. I know you've characterized the motion not as a motion to reconsider, but a rule 52 motion. The district court said it was not and construed it differently. If the district court was right that it was not a proper rule 52 motion, do you have a timeliness problem? I think I did make an error in bringing it under rule 52. I think the district court was wrong also. It's not a rule 54 either. It should have been a rule 59 motion. The way rule 54 defines a judgment, it defines a judgment to include an order from which would be an order denying qualified immunity. As to what the notice of appeal says, this court has repeatedly not simply rested on the formality and the formalistic, but rather what the intent of the appellant was based, for instance, on the briefing. This court has said that in multiple decisions. It's clear that the intent of the appellants was to appeal the actual denial of the qualified immunity. Also, this court has repeatedly, again, not rested on what the appellant says the rule was, but what it should have been. Let's assume it's a rule 59. What was the timing of that motion? It was filed on the 28th day. Under rule 59, 28 days. I purposely did that. In fact, I waited as long as I could. I actually waited as long as I could on 30 days for the appeal because I was waiting to see if the court would actually roll on the public official immunity issue. I looked at the timing of the 28 days and agree there. For this to be timely, it should be construed your position as a rule 59 motion. Yes, because under rule 4 of the law, it simply states that a rule 59 motion told the time to note an appeal. But why is it a rule 59 motion when there's not a judgment? That may be proper, but I think a rule 59 motion, I think that's terms applies when there has been a judgment issued or rendered. Here, we have an order that expressly doesn't do that. It denies your motions to dismiss and no doubt you have a right to appeal the qualified immunity issue. There's law on that, but I'm not sure I understand why 59 is the right way. Obviously, at first, I made that mistake myself because I filed under rule 52. If you look at rule 54, there's a definition section at the very beginning of rule 54 and it defines judgment. One of the definitions of judgment is an order from which an appeal lies. An order denying qualified immunity on appeal lies from that. In fact, in this court, in Campbell v. Galloway in 2007, it's 43 F3258-266 note 2, the court actually says in passing, the magistrate judge addressed the qualified immunity question in a separate order after the defendants filed a timely motion under rule 59 of the Federal Rules of Civil Procedure. So, the link is you have a judgment under rule 59 because rule 54 says an order from which an appeal could be taken is considered a judgment? Correct. I don't know why the definition section is in rule 54 and not somewhere earlier in the rules, but that's where it is. There's case law that says that it points to rule 54's definition of what a judgment is and it includes an appealable order, which this would be. It was my mistake for citing rule 59. Again, in this case, as to the merits of the case, there was no indication in the record that the officers here even knew about- That's not the issue, is it? I mean, I'm not taking away from that. You probably gain a lot of mileage if you're right on that, but it seems to me the medical caretakers are not in the case. So, we'll only look at the complaint and its allegations against the prison officials. The allegations of complaint make two allegations as far as I can tell, and of course, I'll direct this question to your colleague too, but as I understand it, number one, there was a fight that Gellin had with her inmates and the allegation is because of that fight, the guard should have put her in a different cell. And number two, that when she screamed, no one came, but there's no allegation that they heard the screams. And so, those are the two allegations and the question is whether those two allegations constitute a cruel and unusual punishment under the Eighth Amendment, which of course requires established law and requires mens rea and it requires various other elements of establishment. It seems to me that's where your argument is as opposed to focusing on whether the guards knew about the suicide, because there's no allocation that they are imputed or responsible for that. Well, in that case, I think that the case is even stronger and- Well, it may or may not be, but you may be right and maybe by inference, the prison officials recognizing somebody has a mental health problem, but I suspect that many people who have been detained or who are sentenced have mental health conditions and the prison officials probably know it, but is there any case that says they have some kind of duty to do something unless there's a request or some problem on somebody's trying to hurt himself and the guards know about it and they put them under suicide watch or something. Here, the allegations are against the caretaker, medical caretakers who are no longer in the case. And so, when I can comb the complaint to see what's against the prison officials, I think those are the allegations that I was able to call and I'm going to ask your colleague about too, but I thought the two things were one, they didn't move her to another cell, and number two, they didn't respond to her screening. Well, it's those two issues, Your Honor. First of all, I'm not aware of any case law that says that if you get into a fight, it's deliberate indifference not to put you in a special cell. I'm not aware of that. And the other problem factually here is she had already been diagnosed with a mental health disorder. And as the plaintiffs allege in there, and this is on the records, this is page 149 of the adjoint appendix, under the detention center policy, once you have mental health issues, it's medical staff that determines how you're housed, not the guards. Yeah, but we're not resolving facts. I mean, the difficulty I have with a lot of these cases is we've got to go back to the fundamentals. I mean, you already addressed a procedural question that was pretty serious. I think you did have probably a 59, and you didn't label it that way, but a rule 59. But here, the allegation is the guards are charged with conduct, which is alleged to be violating the Eighth Amendment. So the very first step is to say, what conduct are they being charged with? And show me in the complaint where they charge the guards with having to take care of the medical condition. I thought they said the guards should have moved her after the one incident where she had a fight with her colleagues there in the prison. And the second one is she screamed, and they didn't respond. I think that's the allegation. Or no one came. No one came. She was screaming, and no one came. That's the allegation. But maybe there's something else. But I don't think they allege that the prison officials had to take care of the medical condition when it was already being taken care of by the medical staff. Well, I do think that there are multiple allegations blaming the suicide on the guards for not moving her. I think that's... Well, that's my point. That's right. That's the first allegation. They didn't move her after the fight. But the real question is, when she has a fight, do you have to move? Is there a case law that says, or is it deliberate indifference? Is it criminal recklessness is what Pharma used as the tip for not moving her to another cell? And I think the answer is no. There absolutely is not. There's no case law that says simply not removing her to a special cell at that point would be deliberate indifference. And as to the screaming, that, again, that is fairly characterized as, again, failing to prevent her suicide. But again... But that isn't what the allegation is. The allegation is she screamed, and no one came. Right. Nothing else. Right. But I think legally that can fairly be characterized as the theory being they didn't prevent her suicide by failing to respond... They didn't say she failed. They didn't say that prison officials heard her. Exactly. In other words, they said the prison officials heard her, but laughed and decided, oh, she's just a screamer, and didn't go. We have a little bigger problem. But the complaint basically says she screamed, and no one came. And I agree with that. And I think under those facts, again, that's not deliberate indifference. Can I ask, as a follow-up to that, if we take the complaint in the light most favorable to the plaintiff, is it plausible to infer that if someone is screaming in a jail cell that someone, an official, must have heard that? At least that inference might be reasonable? I don't think so, because I think it's... Again, the burden, I think, is on the plaintiff to plead facts that would make that inference reasonable. For instance, say they could have pleaded that these cells were located where guards could have heard them. They didn't do that. They could have pleaded... I'm trying to think of something else that they could have pleaded, but merely pleading, oh, they screamed, that's not enough to then take the inferential leap, especially in a prison environment where people scream it all the time. I think that's a reasonable inference also, that that sort of behavior is common in a prison if we're going to do that reasonably. Well, I guess the problem for the plaintiffs is that they're not in a position at this stage because no discovery has been taken to know, right? So it's a difficult position for the in this case. In fact, that's why they attached all of those prison records. But again, they could have simply pleaded that. They could have pleaded that they didn't hear it based on the discovery, and they didn't do that. The counsel assumed, just for the sake of this question, that it's a reasonable inference in the way it's pled that someone heard it and didn't respond. In qualified immunity, isn't the first issue we have to do is characterize the right at issue? The district court characterized this right as a right of safety for an inmate. It seems to me that's where we have a problem. I'm not aware how that right is specific enough that we can use it as the basis of a qualified immunity decision. We have to really have a right that is more tailored to the facts based on what the Supreme Court's telling us. I think that's your point. If we do that, there's not a right that's been established here, maybe even in construing the facts that way, although maybe it's a tougher case. I think that's correct, Your Honor. I think, as I cited in my brief, this court, Supreme Court, have repeatedly said you can't draw that right too generally. It has to be specific. In fact, it's been said by appellate courts, there is no general right to safety of an inmate. That simply does not exist. I would like to leave the court with this quote from the Gordon case, Gordon v. Kidd, where it says, in the absence of a previous threat of or an earlier attempted suicide, we know of no federal court in the nation that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference. There was no such previous threat or an earlier attempted suicide in this case. Let's say that we agree with you that the officers were entitled to qualified immunity, which would immunize them from liability under federal law, but you've got these state law claims, and you say that with respect to the state law claims, public official immunity would prevent them from being sued. Is that your position? For the negligence claims. In Maryland, it only applies to claims based on negligence. But is it an immunity from suit or an immunity from liability? Because that matters, doesn't it? Well, I think in the, I believe in the Nero v. Mosby case, this court has construed that right, those immunities under state law as immunities from suit. So even though that they would not be immediately appealable in a state court, they would be immediately appealable in this court. I mean, Maryland codifies this particular immunity as an official or individual from any civil liability, which seems to run counter to the notion that it's an immunity from suit. I mean, those are two distinct concepts, right? I agree. If you rest solely on the codified language, I believe that's true. But again, I think the Nero v. Mosby case, I think this court construed it as an immunity from suit. And that decision still stands in this court. But to follow up on that, the Dalkins case from Maryland pretty clearly says that there's no immediate appeal, at least under Maryland law, for either governmental immunity or public official immunity. So, I mean, it seems kind of odd for us. I mean, Maryland is telling us through that that you can't collaterally appeal those decisions involving those issues. So how can they be immunity from suit if Maryland doesn't let you immediately appeal? I mean, the effect of that is, the practical effect is they're not immunity from suit. They're immunity from liability because you can't appeal them to the end of the case, right? In state court, that would be true. But in my understanding of the way the federal court treats that under federal procedure is they don't necessarily follow the state court's review of whether they're immediately appealable. And because we're in federal court, then the court construes it differently. And I think, again, I think in Nero v. Mosby, the court said that those immunities were immediately appealable in federal court. In this case, that issue hasn't been decided yet, has it? The public official immunity, governmental immunity was. Let's keep straight again. I mean, back to the procedure issues, which are very important in these types of cases. All the federal claims would be subject to qualified immunity, right? Correct. But the state claims haven't, the immunity has not been decided yet. Correct. So if we would agree with you, we would grant, we would allow the immunity for the federal claims, but that wouldn't resolve what's still pending before the district court, would it? Well, the public official immunity, I just want to point out again, the governmental immunity, which adheres to the county, that actually was- The governmental immunity, yeah. That was decided on incorrectly. Public official immunity for the guards under state law. Now, just to carry the procedural issue further, if we were not to decide that, just to decide the federal claims, the federal claims would disappear, the claim against Baltimore County would disappear, and you would have state claims only on which you have raised immunity, which has not yet been decided. That's correct. Now, at that point, at some point, the district court could then decide whether it wanted to exercise supplemental jurisdiction and send it to the state courts, or it could certify it, or it could make the decision on it. But it seems to me there's nothing to appeal here on that community, is there? The court hasn't indicated it's not going to grant it, has it? It's not denied it. The court did not rule one way or another. No. Is that right? I thought the court ruled on government immunity. I know you've already said that. But on public official immunity, I thought the court said that the plaintiffs have adequately pled gross negligence. We have a ruling, I thought, that if there's gross negligence, public official immunity doesn't protect the defendant, right? Under Maryland law, that's correct, yes. So, what we don't have is a ruling about ordinary negligence, which seems, you know, we raised it. I had an issue there, but the more I think about it, it seems kind of peculiar. Admittedly, it's not been resolved, but Maryland law is clear that you do have immunity for negligence. So, it not only question whether there's been an adequate pleading of ordinary negligence? Well, I mean, granted there's no ruling that addresses ordinary negligence, but the implication, it seems pretty clear that there is public official immunity for ordinary negligence. The district court said you've adequately pled gross negligence. You may challenge that. I pled gross negligence. So, why isn't that, in effect, a ruling that you don't have public official immunity? I think that's fair, Your Honor. I challenge the gross negligence finding, but I think if the court were to conclude that the district court was right, that these well-pled facts... Well, what hasn't been decided then? If Judge Quattlebaum's right about this, then an issue is before us. I think that's true, Your Honor. If you construe it that way, yes, I think that's fair. We're not construing anything. We're just reading the order. There's adequate... Well, you're construing it in the sense that there was no explicit ruling on public official immunity. It's kind of a backdoor. While you have gross negligence, gross negligence negates public official immunity. So, if the court has already found gross negligence, then in effect... Well, there's no dispute that they're government officials. There's no dispute that it's discretionary conduct. Correct. One more question on it. Please sit down if you don't mind. So, do we... Even if the district court has ruled on governmental immunity and public official immunity, if Maryland... Do we still have this issue of whether they are properly before us if they're immunities from liability only? Is the question, if you find qualified immunity, can you then decide that the public official immunity should be sent back or... Or the governmental for that matter. Normally, we can consider issues. If we have jurisdiction over, for example, qualified immunity, we can consider appendant claims. I'm not sure these are appendant claims. And if Maryland... If they're not appendant, just for the sake of discussion, then it seems like, why would we be considering even reviewing the governmental immunity? Now, maybe that's immunity from suit. I know your argument is under federal law, that's how we look at it. But isn't that the question we must decide? If it's immunity from suit, we decide it. If it's not and it's not pendant, we wouldn't decide either one of them, would we? That's fair, Your Honor. If you conclude that it's not immunity from suit, then you would not... Clearly under Maryland law, it's not immunity from suit. We'd have to say, we look at it different. Yes, it's not an immediately appealable order in state court. What's the case that says we should... If Maryland law decides it's immunity from liability, we can decide as a matter of federal law, it's immunity from suit. That seems like a remarkable thing, but it sounds like we've said that. As far as I read the cases, Your Honor, obviously, I could be wrong. No, no, no. What's the case? Is that in your brief? It should be in my brief. Yes, there are several cases. Yes. I suppose we can't unsay it, but we'll see. Thank you very much, Mr. Wine. Good morning, Your Honors. May it please the court. My name is Michael Wine. I'm here on behalf of the appellees, Mr. and Mrs. Gellin. I want to briefly talk about... There's actually three different issues to look at in this case, two are procedural, one is on the merits. The first is whether or not there is any actual jurisdiction in this court, because there really is not a full and final judgment from two or three different avenues. Viewings. If this court's decision of Al-Shamari, which was a en banc decision involving very complicated issues of federal contractor immunity, that appears to be on point. However, that decision has not been adopted specifically in other reported or published opinions of this court. Let me just understand the issue, what you're addressing. The qualified immunity of the law is appealable. There's nothing to... The Supreme Court has said it, we've done it about three dozen cases or more. You can make your argument on that, but I think that's a dead end. The question, more complex question, I think, is whether we review these immunity from the state claims. Well, before I get to what Your Honor just asked, again, I want to be clear. I was pointing out that Al-Shamari, which says that there has to be an actual final judgment specifically on an interlocutory appeal, actually has to be a full and final judgment. And as Baltimore County appears to concede, they acknowledge that there is no... This is an interlocutory appeal and any single officer can raise it at any time. I mean, he's... Not anytime you could waive it, but it seems to me when an officer has been sued under federal law, he can claim qualified immunity. And if the district court denies it, he can appeal it immediately because the immunity is immunity from suit. I would respectfully disagree for two reasons, Your Honor. First of all, if you look back to Cohen, it actually talks about the purpose, even on that narrow Cohen doctrine, is to disallow appeal from any decision which is tentative, informal, and or incomplete. And I'm not trying to primarily just argue that it's an incomplete, tentative decision, but it is. And all the cases that have come out since Cohen... What's incomplete about it? So what they did, and this is what was talked about originally with counsel, is they filed essentially a motion for reconsideration. They called it a Rule 52. The court found it to be Rule 54. It seems to be now a concession that it's 59. And they appealed it even when their motion for reconsideration was still pending. The court denied most of it, but said, you know, I would like to get more clarity and give more clarity and allow more briefing for both parties. And yet as soon as that order was issued, or at least within 30 days... So let's assume they had not filed that motion for reconsideration and simply filed an appeal of the order denying qualified immunity. You don't contest that that would have been... I would not be arguing Al-Shammari. I would not be pointing out the... I mean, this is just a timing issue, I guess. The question is, what did the notice of appeal actually appeal from? Was it the motion to reconsider or the initial motion? And that's what we were talking with your courier about. And there are actually more issues beyond the question of jurisdiction, because the Waltz guy's case talks about this as well, because they filed a notice of... In that case, it was a little bit... Instead of first, it was second. They didn't properly do a notice of appeal. And in that case, it said, I believe... I don't... It's a new case, so it's at 11 through 13. What's the theory? What's your argument? I don't understand your argument. The court made a decision that there is no qualified immunity and set aside the timing issue right now. That's the issue before us. The court decided there's no qualified immunity under federal law for these officers. And that's appealable. Now, the question is, you argue it's not. I want to understand what your... Don't give me a case. Give me your theory. What's the principle? Yes, Your Honor. This was also discussed by, I believe, Judge Portalbaum and a little bit Chief Judge Diaz. Maryland law and... I'm talking about federal law. Well, yes. That's the Gray-Hopkins case out of this court. And that was discussing in detail. Please don't discuss a case. Tell me the theory why qualified immunity ruling is not appealable. Give me what your reason is. Don't cite a case. All right. The original basis of the Maryland would not allow this appeal. This is federal law and federal qualified immunity. And Mitchell v. Forsythe has ruled that that is appealable because the immunity is immunity from suit. And to go any further, you're violating the officer's rights. I have two responses. One is, I was just pointing out that there is a disconnect in this court, the circuit's case law. The only that has cited to Dawkins, even though that's the seminal case in Maryland, is the Nero v. Mosby case. I'm talking about the federal law. You filed an Eighth Amendment claim, didn't you? My client said I'm on appeal. And the court denied qualified amendment under the Eighth Amendment. And the question is, why isn't that appealable? Yes. And... It's not a Maryland issue. This is federal law under a federal claim. I understand, Your Honor. I'm just pointing out that there is an inconsistency or something that has not been directly dealt with because the Gray-Hopkins case said that Maryland would actually not allow for... Would allow for interlocutory appeals. And actually, they reversed the Hogg case in their decision of Hawkins. Based on what immunity are you talking... Are you confusing qualified immunity with public official immunity? I'm just pointing out, Your Honor... Those are two separate immunities. We're talking about qualified immunity. Do you dispute that, but for this issue of the timing of the notice of appeal, if the officers in this case had appealed a adverse judgment with respect to qualified immunity, do you dispute that that's a proper appeal? And if so, why? If they had timely appealed it, I would say... I would still be making the other arguments, but I understand that there is other case laws such as... Yes. But here, with all due respect, I mean, this case was set forth to go into discovery for the first time, seven years after it was originally filed. If you look at the decision which they cite, the Baltimore County Cites of Behrens, I'm maybe not pronouncing it B-E-H-R-E-N-S, it's the United States Supreme Court case. That was from 1996. What that talked about was it was the Ninth Circuit's decision which allowed for more than one interlocutory appeal. The Ninth Circuit said, you've already got one interlocutory appeal. You shouldn't have to go and do it multiple times. That was the only circuit. The United States Supreme Court says there's no specific preclusion of it. But what's notable, and this is in a footnote earlier in the case, is in Behrens, there was only five cases ever that the United States Supreme Court could find where multiple interlocutory appeals are going and being sought at. That was 1996. What's that got to do with this case? Well, a lot of these issues, Your Honor, and certainly the predicate involved policy. I'd like to settle one issue. I can't understand what your argument is, why a ruling on qualified immunity under the Eighth Amendment is not immediately appealable and whether, set aside the timing, is not appealable in this case. I haven't heard your argument why it isn't. I would have to go and rely on the briefing which says that, number one, there is this inconsistency in terms of federal law interpreting Maryland law and the policies involved. However, in my supplemental brief— Because Maryland law doesn't follow federal law, we shouldn't apply it anymore. Well, not quite, Your Honor. Federal law said we anticipate Maryland law is going to say X, Y, and Z. A decision came out a year later that found the exact opposite. It was understandable that the visiting judge in that case would find it because they overruled this case called Hogg, H-O-G-G. At the very least, I'm pointing out that there is an inconsistency, discrepancy, and need for harmonization if this Court is going to find that these cases that began 25 years ago and also the United States Supreme Court cases that began developing around that. Secondly, towards the end of my supplemental brief, I pointed out there's a distinction in other circuits which I don't think this Court has actually fully addressed. It allows for a much more nuanced but deferential treatment for findings of fact by the trial court because when the trial court says, hey, well, this is what I we're going to need to have discovery in other circuits, that's a much higher bar. When they've done that, in order to go and have a proper interlocutory appeal, I believe in the Second Circuit and in the Fifth Circuit, they have requirements. And that case law or just, again, it's not a change from this Court's law. Assuming Judge Niemeyer, you're correctly quoting everything and you don't want to go back to the point I'm making originally, there should be an opportunity to go and clarify what is the Fourth Circuit law and what needs to be done if a governmental entity, which is a repeat litigant in this Court, you know, doesn't unduly get around the Federal District Court's findings. And I believe there are cases in the Second Circuit and the Fifth Circuit that go and have a much more deference to it. There has to be, you've got to go and say, oh, okay, there are, we're not, you can't disagree with the factual findings, you can't disagree with the arguments that are by the plaintiff. Mr. Wine, I think we might be better served if we've moved on to, let's assume that we don't agree with you and we think that this appeal is properly before us. So tell us why you think the District Court, tell us why you think these officers are not entitled to qualified immunity. Yes, thank you, Mr. Chief Judge. The, I would point out that in Appellee's brief in this case, my office quoted directly what was argued by the Plaintiff's Counsel at the trial level and what was found by Judge Copperthite. I hope I'm pronouncing his name correctly. And there was a long list of about, I'd say, 14 specific findings of fact that Judge Copperthite in everything, in denying, he actually granted the motion to dismiss on a fair percentage of the case, but he denied it on other parts. And amongst those are what was talked about earlier. Number one, there was a major altercation by the young woman with other inmates, and yet they didn't go and move her or ensure that there was proper safety. Before we get to that, so tell us, related to Judge Quattlebaum's question, what is the right at issue that you think implicates the Eighth Amendment and shows that these officers were deliberately indifferent? And I can't say 100% because there hasn't been discovery. That's, I think, part of the point. Well, but you have to have, you can't say that. You have to have a theory of the right. I misunderstood, Your Honor. Yes, they have the right to safety, and particularly after being notified whether or not they should or should have not known about it. And there are pled arguments, and the supplemental briefing points this out, I'd say five or six times during the actual amended complaint. Not just that she was yelling, it was actually also, I think, more the inmates were yelling. They were going and banging their, you know, the walls. They were screaming. No one replied. No one came. And this is in a jail situation. So what my colleague is contending as, well, it may not be enough for Eighth Amendment scrutiny. Well, unfortunately, we're still in discovery. This is on a motion to dismiss. It would be nice to go and have who exactly were the other, who were the employees on that day? What did they hear? What did they see? Why, you know, how long of a response there was? Whether there were other inmates who were screaming. That's what they, they were screaming that this woman was about to commit suicide. I mean, the issue for us is because qualified immunity can be appealed at any time, including from a, you know, from a motion to dismiss or a motion of a 12, Rule 12 motion. It's your obligation to identify a right that implicates the Eighth Amendment and then to tell us how that right is clearly established. And if you want to stick with the right to safety, that's fine, but that's a pretty tough hill to climb given its breadth in Supreme Court law. No, no. I, again, I'm trying to, I'm trying to say that the court's findings, I believe, were fully accurate. But what I would say is that there is, you know, the right to safety, right to not be dealing with undue injury. There was, uh, there was a recent case out of this court that kind of discussed other aspects of a suicidal individual and, and it wasn't directly on point, but it has, it did expand it to, I think, like an objective type right. And what I would say on that is the, um... Well, what are the allegations in the complaint that these officers knew that your client was suicidal? I didn't, I didn't see that. Well, again, we're, we're at the complaint stage, but I believe what they said was there was there, it gets intermingled with what the medical personnel, there's no doubt about it. Medical folks are out of the, out of the case. You're left with the correctional officers. And as best I can tell, there's no allegation that these correctional officers understood that your client was suicidal. They may have understood that she had some mental health issues, but those are two very different things. And again, had this gone, had they, uh, Baltimore City not done this particular interlocutory appeal, there would have been discovery as the court had ordered. Of course, the qualified immunity is intended to provide protection from discovery. Supreme Court's expressed that. In other words, if an officer is entitled to qualified immunity, he should not have to go through discovery. They've used that express procedure. I understand your Honor's point on that. I would point out that the original basis upon that, when you look at Cohen, I'm not as sure, but I understand, of course, the Supreme Court in the 80s and 90s has had cases that allow for that. Counsel, could I shift gears to the gross negligence issue? Mm-hmm. Yes, of course. As I read the district court's order saying that you have adequately pled gross negligence, it said that the basis of saying that was sufficient were these allegations. One, that the officers refused to rehouse your client or your client's deceased after two altercations. Then the district court said, which I think is accurately in the complaint attributable to the officer defendants, but then the district court said that Ashley had complained that the inmates were screaming her name. As I read paragraph 50, the allegations of that, 49 through 51, the only report she gave that the inmates were screaming her name was to the correction officer, Schumann. Then the district court also said that she complained about crying, screaming, and hearing voices. The same thing, the only thing you pled that she reported that to was defendant Schumann. My point is, when I look at what the district court said you pled that justified gross negligence, except for the altercation, it looks like you only pled those as to defendant Schumann. Your Honor, the trial counsel, it's at Joint Appendix 168 through 173, listed the various findings of Judge Cofferty, including what you said, that the correctional officers heard she was crying, screaming, and complaining of hearing voices. But you didn't plead that. My question is, that's what the order said, but we're reviewing that order. If the allegations about crying and screaming and hearing voices, as serious as those may be, are really things that the plaintiff only pled as to Schumann, that might be erroneous. Your Honor, again, the trial judge had this. She also mentioned, I believe, and I'm quoting my brief at page 37, the plaintiff also alleged that the correctional officer defendants deliberately ignored the pleas of other inmates who, apparently aware of Ms. Gellin's impending death. Where's that alleged in the complaint? It's apparently, quoting paragraph 59, Your Honor, were continuously screaming while banging on the cell walls. No, you said deliberately. You used the word deliberately. I will. I think that gets to the point. Judge Niemeyer's question, if you actually look at 59, it doesn't allege that the correctional officers heard her and ignored it. So perhaps, as Chief Judge Diaz said, we're supposed to infer that, but it's not pled. But respectfully, again, if we're going to have multiple interlocutory appeals, I don't think that the court is wrong in saying that's a reasonable inference. If someone is screaming and yelling and multiple other inmates are doing this, it is a proper focus of discovery to find out exactly what was said, how long they were saying it, did anyone respond, all of that. None of this is in the record because there's not been discovery. I see my time is up. I would like to briefly close. Your Honor, this is, of course, a tragic circumstance. Ms. Gellin and Mr. Gellin, their daughter died. They filed it with counsel in 2016. It still has not, for various reasons, including this, got past discovery. I don't think necessarily, if this court agrees that there is an improper interlocutory appeal, it's not timely because of the notice of appeal as well under Walsh's guise, we would ask this court to hopefully ensure that this case at least goes through discovery. These issues that the trial court found, which is typically when the trial court finds there are sufficient facts, the appellate court should not have to intervene, and this court shouldn't have to go and intervene while a case is pending, while there are still orders that are pending. This case has multiple avenues to potentially reverse, but we would ask this reversal, jurisdictional reversal, to at least ensure that there are not three or four interlocutory appeals for the clients and just allow for this case to proceed through discovery. Thank you, Mr. Warren. Mr. Neitzel. Thank you, Judge. Judge Qualabama, to your point regarding Officer Shuman and the crying, screaming, hearing voices, I do note that in the very records that are attached to the pleading, it indicates, this is on Joint Appendix 94, that having been made aware of that, Officer Shuman then referred her for an evaluation by mental health. That surely cannot be gross negligence, and it says per custody request, she was evaluated for crying, screaming, and hearing voices. That's on page 94 of the Joint Appendix. He did what he was supposed to do once he was aware of that. Is Shuman a correctional officer? Yes, he is. Okay, I'm sorry. I know, it's hard. There's so many defendants, it's sometimes hard. Yes, he's one of the corrections workers. No, actually, no, Your Honor, I take that back. He is a mental health, I'm thinking of Salisbury, Officer Salisbury. That's who I was thinking of. Yes, Kyle Shuman, he was a clinical social worker. He's the one that interviewed that. But the Joint Appendix 94 says per custody request for crying, screaming, and hearing voices, Kyle Shuman evaluated. So it was clear based on that, that the officers refer her to evaluation because of that. And that's really the only time that, in the entire record, where there's any indication that any of the officers knew anything about her mental health. As to the appealability of the public official immunity and governmental immunity, I just want to direct the Court to the footnotes on page 19 and 23 of Appellant's brief, citing there's actually Maryland case law that says that both of those immunities are immunity from suit. And because of that, in the Nero v. Mosby case in 2018, this Court concluded that public official immunity is immediately appealable under the collateral order doctrine because of Maryland state law. That's all I have. Which was that? That was Nero v. Mosby. It's 890 F3-106 from 2018. Is the immunity from suit decision that you referred to after the Dalkins case? What year is the Dalkins case? I confess I don't remember that. Yeah, I'll have to get that out. I'll try to find that myself. That was 2003. It is. There was a case called Live Save Baltimore County in 2004, which said that public official immunity is immunity from suit. Unless there's any questions, that's all I have, Your Honor. Thank you very much, Mr. Neitzel. Thank both counsel for their arguments. We'll come down and greet you and then move on to our second case.
judges: Albert Diaz, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.